CT Corporation

**Service of Process Transmittal**
11/10/2016
CT Log Number 530160563

**TO:** Lina Donskaya
Starr Insurance Holdings, Inc.
399 Park Avenue, 9th Floor
New York, NY 10022

**RE:** **Process Served in Florida**

**FOR:** Starr Indemnity & Liability Company (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FRED FOX AND ROBERT FOX, Pltfs. vs. Starr Indemnity & Liability Company, Dft. |
| **DOCUMENT(S) SERVED:** | Notice(s), Summons, Complaint, Exhibit(s), Attachment(s) |
| **COURT/AGENCY:** | Hillsborough County Circuit Court, FL<br>Case # 16CA010349 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Electronic Receipt on 11/10/2016 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | KRISTIN A DEMERS-CROWELL<br>LAW OFFICE OF CHRISTOPHER LIGORI & ASSOCIATES, P.A.<br>117 S. WILLOW AVENUE<br>TAMPA, FL 33606<br>813-223-2929 |
| **REMARKS:** | Process received by Chief Financial Officer on 11/08/2016, and forwarded to CT Corporation System by electronic delivery on 11/10/2016 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air , 1Z0399EX0118722287<br>Image SOP<br>Email Notification, Sara Barfield sara.barfield@starrcompanies.com<br>Email Notification, Lina Donskaya Lina.Donskaya@starrcompanies.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1200 South Pine Island Road<br>Plantation, FL 33324 |
| **TELEPHONE:** | 954-473-5503 |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

*16-000176639*

CHIEF FINANCIAL OFFICER
JEFF ATWATER
STATE OF FLORIDA

---

FRED FOX AND ROBERT FOX

PLAINTIFF(S)

VS.

STARR INDEMNITY & LIABILITY COMPANY

DEFENDANT(S)
_____________________________________/

SUMMONS, COMPLAINT

**CASE #:** 16-CA-010349
**COURT:** CIRCUIT COURT
**COUNTY:** HILLSBOROUGH
**DFS-SOP #:** 16-000176639

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Tuesday, November 8, 2016 and a copy was forwarded by ELECTRONIC DELIVERY on Thursday, November 10, 2016 to the designated agent for the named entity as shown below.

STARR INDEMNITY & LIABILITY COMPANY
DONNA MOCH
1200 SOUTH PINE ISLAND ROAD
PLANTATION FL 33324

***Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent fillings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jeff Atwater
Chief Financial Officer

KRISTIN A DEMERS-CROWELL, ESQ.
LAW OFFICE OF CHRISTOPHER LIGORI & ASSOCIATES, P.A.
117 S. WILLOW AVENUE
TAMPA FL 33606

KAJ

RECEIVED AS STATUTORY REGISTERED AGENT on 08 November, 2016 and served on defendant or named party on 10 November, 2016 by the Florida Department of Financial Services

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

**Fred Fox; Robert Fox**
Plaintiff(s)
vs

Case No.: **16-CA-010349**

**Starr Indemnity & Liability Company**
Defendant(s)

Division K

**SUMMONS**

**THE STATE OF FLORIDA:**
To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant(s)

**Starr Indemnity & Liability Company**
**c/o Florida Chief Financial Officer as RA**
**Service of Process Section**
**P.O. Box 6200**
**Tallahassee, Fl 32314-6200**

Each defendant is required to serve written defenses to the complaint or petition on KRISTIN ALEXANDRA DEMERS-CROWELL, plaintiff's attorney, whose address is **CHRISTOPHER LIGORI & ASSOCIATES 117 S WILLOW AVE TAMPA FL 33606** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on November 8, 2016.

Attorney: KRISTIN ALEXANDRA DEMERS-CROWELL
Attorney For: Fred Fox
Address: CHRISTOPHER LIGORI & ASSOCIATES
117 S WILLOW AVE
TAMPA FL 33606

Florida Bar No: 134521

**PAT FRANK**
As Clerk of the Court

Dana Caranante
Dana Caranante, Deputy Clerk

Prepared By:Veronica Phillips, Deputy Clerk
P.O. Box 3360
Tampa, FL 33601
800 E Twiggs St
Room 101
Tampa FL 33602
(813)276-8100 extension 4365

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County**

**Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

Florida Rules of Civil Procedure Form 1.902(a), Summons (06/10)

IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

FRED FOX and
ROBERT FOX,

Plaintiffs, CASE NO.:

vs. DIVISION:

STARR INDEMNITY &
LIABILITY COMPANY,

Defendant.
_______________________________/

## COMPLAINT

COME NOW the Plaintiffs, FRED FOX and ROBERT FOX ("Plaintiffs"), and hereby sue the Defendant, STARR INDEMNITY & LIABILITY COMPANY ("Defendant"), and allege the following:

## GENERAL ALLEGATIONS

1. This is an action for damages exceeding fifteen thousand and 00/100 dollars ($15,000.00), exclusive of interest, costs, and attorney's fees, and is otherwise within the jurisdiction of this Court.

2. At all times material hereto, Plaintiffs were the owners of real property located at 502 N. Gilchrist Avenue, Tampa, Hillsborough County, FL 33606.

3. At all times material hereto, Defendant was and is a corporation duly authorized to conduct business in the State of Florida and was engaged in the business of insurance in, Hillsborough County, Florida.

4. Jurisdiction and venue are proper before this court.

5. Plaintiffs purchased a Commercial Property insurance policy, 1000051837131 (the "Policy"), from Defendant. The Policy provided coverage for Plaintiffs' property located at

502 N. Gilchrist Avenue, Tampa, Hillsborough County, FL 33606. A copy of the subject policy is attached hereto as Exhibit "A."

6. Plaintiffs paid all premiums on the Policy, and the Policy was in full and continuing force and effect at all relevant times herein.

7. On or about, April 19, 2014, during the policy period, Plaintiffs' property sustained damage as a result of fire.

8. The damage to Plaintiffs' property was covered under the policy.

9. Plaintiffs complied with all conditions precedent to obtaining payment of benefits under the Policy from Defendant or Defendant waived such conditions precedent.

10. Defendant handled the loss through its duly authorized representatives and adjusters.

11. Defendant improperly delayed Plaintiffs' insurance claim.

12. Defendant failed to timely pay Plaintiffs the full amount of insurance benefits owed under the Policy of insurance for the fire loss.

13. Plaintiffs filed a Civil Remedy Notice on September 9, 2014. Defendant acknowledged receipt, and filed a response to the Civil Remedy Notice on November 7, 2014. See both attached as "Composite Exhibit B".

14. Thereafter, the parties participated in the appraisal process regarding the subject fire claim.

15. On May 4, 20016, Plaintiffs' Appraiser and the Umpire entered an appraisal award of $930,041.36 for the building (Coverage A), See Appraisal Award "Exhibit "C" – which was more than Defendant tendered prior to the expiration of the Civil Remedy Notice.

**COUNT I**

**(Unfair Claims Practices pursuant to Florida Statutes §624.155 and §626.9541)**

16. Plaintiffs re-allege the allegations contained in Paragraphs one (1) through

fourteen (15) as if fully set forth herein, and further alleges the following.

17. This action arises from Defendant's failure to promptly, fully, fairly, and in good faith pay Plaintiffs' fire loss claim.

18. As a condition of recovery to this action, all underlying contractual issues in the above-noted case were resolved in favor of Plaintiffs.

19. As a condition precedent to bringing this action, Plaintiffs filed a Civil Remedy Notice of Insurer Violation with the Florida Department of Insurance and Defendant pursuant to Florida Statute §624.155. See "Composite Exhibit B."

20. The Florida Department of Insurance accepted the aforementioned Civil Remedy Notice on September 9, 2014.

21. Defendant did not fully pay Plaintiffs' damages or correct the circumstances within sixty (60) days of the acceptable date.

22. Defendant is engaged in the business of insurance and is subject to Florida statutes, Florida regulations, and Florida law while involved and engaged in the business of insurance.

23. Rather than carrying out its contractual, statutory, regulatory and ethical duties, Defendant committed acts during the adjustment of the claim and the underlying appraisal which were not in "good faith" and were in violation of Florida Statute §624.155(1)(b)(1) and Florida Statute §626.9541(1)(i)(1) et. seq. These acts include, but are not limited to, the following:

a) Delaying investigating the claim;

b) Delaying obtaining all necessary estimates of damage, investigatory and expert reports;

c) Failure to properly investigate the claim;

d) Engaging in the above actions in order to avoid and/or delay payment of a covered loss;

e) Unsatisfactory settlement offers;

f) Attempts to find ways to delay Plaintiffs' claim rather than providing prompt and full indemnity to the policyholders;

g) Creation of a hostile and adversarial investigation and adjustment of Plaintiffs' insurance claims;

h) Failure to properly train, supervise or otherwise manage adjusters, representatives, and investigators to properly, and in good faith, investigate and adjust claims so that a prompt and fair evaluation of the claim can be made, and proper indemnity paid, resulting in the failure to pay a covered claim;

i) Failure to adopt and implement standards for the proper investigation of Plaintiffs' claim, resulting in the aforementioned conduct;

j) Retention of outcome oriented experts;

k) Misrepresentation and/or omission of pertinent facts relating to the coverages and/or facts of the loss at issue, so as to provide an illegitimate basis for delay of the claim, including the obligations of both the insured and the insurer during the adjustment of this claim;

l) Delay of Plaintiffs' claim without conducting a full and reasonable investigation based upon available information;

m) Training, evaluation and promotion of adjusters and claims management based on reduction of claim severity rather than promptly and fully paying policyholders amounts owed, including the Plaintiffs herein;

n) Setting goals of claims severity and average claims payments in advance so that claims personnel and management are rewarded and/or evaluated upon goals which undermine prompt and full indemnity.

The above conduct demonstrates Defendant's failure to comply in good faith with the terms and conditions of the Policy of insurance.

24. Defendant implemented claims programs that were/are secret and unknown practices that were designed to pressure its adjusters/investigators/employees to pay less than the value of the claim, and be free from regulatory and judicial review, and create an unfair advantage over its competitors, and profit by paying less to policyholder, specifically, the Plaintiffs herein.

25. The aforementioned actions complained of in Paragraph twenty-three (23), among others, were made by Defendant so often as to constitute a general business practice and with the motive to enhance Defendant's profits and were designed to be to the detriment of Defendant's policyholders and, specifically, the Plaintiffs herein, and all such actions were conducted intentionally, maliciously, or in the reckless disregard of the rights of the Plaintiffs.

26. The aforementioned actions complained of in Paragraph twenty-three (23) through twenty-five (25), among others, damaged Plaintiffs, and such damages include, but are not limited to:

a) Costs and fees associated with the professional help and assistance to maintain and submit the claim, as well as to appraise the claim against Defendant;

b) Interest and pre-judgment interest;

c) Costs associated with the underlying appraisal; and

d) Other damages according to proof.

27. Plaintiffs have retained the undersigned attorneys and have agreed to pay them reasonable fees and costs, which are compensable pursuant to Florida Statute §624.155, et seq.

WHEREFORE, Plaintiffs demand a judgment against Defendant for:

1. All general and special damages;

2. Interest and pre-judgment interest;

3. Post-judgment interest;

4. Court costs, expert fees and attorney's fees;

5. All such other relief to which the Plaintiffs may be justly entitled; and

6. Trial by jury of all issues so triable as a matter of right.

DATED this 17th day of November, 2016.

Kristin Demers-Crowell, Esq.
Florida Bar No.: 0134521
Christopher Ligori & Associates
117 S. Willow Avenue
Tampa, FL 33606
Phone: (813) 223-2929
Fax: (813) 251-6853
Attorney for Plaintiff
Service Email: Pleadings@ligorilaw.com

# STARR BUSINESSOWNERS POLICY DECLARATIONS

## Starr Indemnity & Liability Company

Dallas, TX

Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

| | | | | | |
|---|---|---|---|---|---|
| **Policy Number:1000051837131** | | | **Producer Name: NetComp Insurance Corp** | | |
| Named Insured: | FRED J. FOX JR. & ROBERT A. FOX | | | | |
| Mailing Address: | 4401 W Platt St, Tampa, FL 33609-2610 | | | | |
| Policy Period: | FROM | 08/20/2013 | TO | 08/20/2014 | |
| At 12:01 A.M.* Standard Time at your mailing address shown above. | | | | | |
| *EXCEPTIONS: 12:00 noon in Maine, Michigan and North Carolina | | | | | |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**Description Of Business**

Form Of Business:

☐ Individual ☐ Partnership ☐ Joint Venture ☐ Limited Liability Company

X Organization, including a corporation (but not including a partnership, joint venture or limited liability company)

**Business Description:** LRO - TENANT IS NON PROFIT SPAY/NEUTER VET CLINIC

| | | | | |
|---|---|---|---|---|
| The Total Annual Premium is $ 6,110.36 , and is payable $ at inception, and | | | | |
| $ N/A at each anniversary. | | | | |
| ADVANCE PREMIUM $ N/A | | | | |
| POLICIES SUBJECT TO PREMIUM AUDIT: N/A | | | | |
| AUDIT PERIOD | ☐ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |



Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

EXHIBIT

tabbies

A

# SECTION I – PROPERTY

**Property Coverage Limits Of Insurance**

| Premises Location | Type Of Property (Building Or Business And Personal Property) | Actual Cash Value Bldg. Option (Yes Or No) | Increase Bldg. Limit (%) | Limit Of Insurance* |
|---|---|---|---|---|
| Location 1 Building 1 | Building | No | 4% | $945,000 |
| 502 N Gilchrist Ave, Tampa, FL 33606-1319 | BPP | N/A | N/A | $0 |

*Includes Automatic Increase Building Limit Percentage

| Property Deductible | Optional Coverage/Glass Deductible | Windstorm Or Hail Percentage Deductible | Earthquake/Volcanic Action Percentage Deductible |
|---|---|---|---|
| $500 | $500 | 2% | % |

**Additional Coverages – Optional Higher Limits/Extended Number Of Days (Per Policy)**

| Coverage | Additional Premium | Limit Of Insurance/Extended Number Of Days |
|---|---|---|
| Forgery Or Alteration | $ | $ |
| Business Income – Extended Number Of Days For Ordinary Payroll Expenses | $ | Days |
| Extended Business Income – Extended Number Of Days | $ | Days |
| Interruption Of Computer Operations – Increased Limit | $ 0.00 | $ 15,000 |

**Additional Coverage – Optional Higher Limits (Per Premises)**

| Coverage | Prem. No. | Additional Premium | Limit Of Insurance |
|---|---|---|---|
| Fire Department Service Charge | 1 | $ 0.00 | $ 25,000 |

| | | | | | |
|---|---|---|---|---|---|
| 1 | | Outdoor Signs | $ | | Per Occurrence |

**Additional Coverage – Business Income – Ordinary Payroll Additional Exemptions**

| Coverage | Exempt Job Classifications | Exempt Employees |
|---|---|---|
| Business Income | | |


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Optional Coverages – Applicable only if an "X" is shown in the boxes below:**

| | | Coverage | Limit Of Insurance | | |
|---|---|---|---|---|---|
| 1. | | Money & Securities | $ | 0 | Inside the Premises |
| | | | $ | 0 | Outside the Premises |
| 2. | | Employee Dishonesty | $ | | Per Occurrence |
| 3. | | Mechanical Breakdown | Included | | |
| 4. | | Burglary & Robbery (Named Peril Endorsement only); | $ | | |
| | | Money & Securities (Amount included when Burglary And Robbery Option Is Selected) | $ | | Inside the Premises |
| | | | $ | | Outside the Premises |
| 5. | | Other: | Specify: | | |

# SECTION II – LIABILITY AND MEDICAL EXPENSES

Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to **Section II – Liability** in the Businessowners Coverage Form and any attached endorsements.

| Coverage | Limit Of Insurance | |
|---|---|---|
| Liability & Medical Expenses | $ 2,000,000 | Per Occurrence |
| Medical Expenses | $ 5,000 | Per Person |
| Damage To Premises Rented To You | $ 100,000 | Any One Premises |
| Other Than Products/Completed Operations Aggregate | $ 4,000,000 | |
| Products/Completed Operations Aggregate | $ 4,000,000 | |

| DEDUCTIBLE | |
|---|---|
| **Optional Property Damage Liability Deductible:** | $ |
| ☐ Per Claim (Refer to **BP 07 03**); or | ☐ Per Occurrence (Refer to **BP 07 04**) |

| ENDORSEMENTS APPLICABLE PER BUSINESS OWNERS POLICY | |
|---|---|
| **Endorsement Number** | **Endorsement Title** |
| MailerPage | Mailer Page |
| BP0001D0212 | STARR BUSINESSOWNERS POLICY DECLARATIONS |
| DCTSCHEDULEOFTAXES | DCT SCHEDULE OF TAXES |
| BP03120106 | WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLES |
| BP04040106 | HIRED AUTO AND NON-OWNED AUTO LIABILITY |
| BP04560106 | UTILITY SERVICES - DIRECT DAMAGE |
| BP04570106 | UTILITY SERVICES - TIME ELEMENT |


**Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.**
**Includes copyrighted material of ISO Properties, Inc., used with its permission.**

| | |
|---|---|
| BP04590106 | EQUIPMENT BREAKDOWN PROTECTION COVERAGE |
| BP06010107 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| BP03030110 | FLORIDA CHANGES |
| BP03110110 | FLORIDA - SINKHOLE LOSS COVERAGE |
| BP0020212 | ENHANCEMENT ENDORSEMENT |
| BP00030312 | BOP FORM TABLE OF CONTENTS |
| BP00030110 | BUSINESSOWNERS COVERAGE FORM |
| SILCBP00010212 | BUSINESSOWNERS POLICY (JACKET) |
| CLAIMSREPORTINGINSTRUCTIONS | CLAIMS REPORTING INSTRUCTIONS |

## Summary of Coverage Extensions

This is a coverage summary only. Please refer to the declarations for policy limits.

| Coverage | Limit Of Insurance |
|---|---|
| 1. Accounts Receivable | $10,000 on/premises/$5,000 off premises |
| 2. Additional Debris Removal | $25,000 |
| 3. Appurtenant Structures | $15,000 |
| 4. Bail Bonds | $1,000 |
| 5. Business Income from Dependent Properties | $10,000 |
| 6. Business Income Ordinary Payroll | 60 days following loss |
| 7. Computer Fraud | $5,000 |
| 8. Computer Interruption | $10,000 |
| 9. Crisis Containment | $2,000 |
| 10. Electronic Data | $15,000 |
| 11. Employee Dishonesty | $25,000 |
| 12. Fire Department Service Charge | $25,000 |
| 13. Fire Extinguisher Recharge | $10,000 |
| 14. Forgery or Alteration | $2,500 |
| 15. Fungi, Dry Rot and Bacteria | $15,000 |
| 16. Increased Cost of Construction | $25,000 |
| 17. Interruption of Computer Operations | $15,000 |
| 18. Lock and Key Replacement | $2,000 |
| 19. Lost Wages – Claims Investigation | $250 per day |
| 20. Money and Securities | $5,000 on premises/ $2,000 off premises |
| 21. Money orders and Counterfeit Money/ | $2,000 |
| 22. Newly Acquired Property | $500,000 – Building<br>$250,000 – Personal Property |
| 23. Outdoor Property | $2,500 ($500 any one plant) |
| 24. Outdoor Signs | $15,000 |
| 25. Personal Effects | $2,500 |
| 26. Personal Property off premises | $10,000 |
| 27. Pollution Clean-up | $25,000 |
| 28. Valuable Papers | $10,000 on premises $5,0000 off |


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

| Coverage | Limit Of Insurance |
|---|---|
| | premises |
| 29. Water Back Up | $2,000 |
| | |

COUNTERSIGNED ______________________ BY ______________________________

DATE AUTHORIZED REPRESENTATIVE



Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

POLICY NUMBER: 1000051837131

**BUSINESSOWNERS**
**SCHEDULE OF STATE TAXES**

| State | Applicable Taxes | Amount |
|---|---|---|
| FL | Emer. Mgmt. Preparedness Fund Sur. | 4.00 |
| FL | Fire Marshal Regulatory Assessment | 33.18 |
| FL | Hurricane Catastrophe Fund | 32.95 |
| | Total | 70.36 |

POLICY NUMBER: 1000051837131

BUSINESSOWNERS
BP 03 12 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

| Premises Number | Windstorm Or Hail Deductible Percentage (Enter 1%, 2% Or 5%) |
|---|---|
| 1 | 2% |
| | % |
| | % |

The following provisions apply to **Section I – Property:**

The Windstorm or Hail Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of a Windstorm or Hail occurrence.

With respect to Covered Property at a premises identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm or Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

**WINDSTORM OR HAIL DEDUCTIBLE CLAUSE**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage. This Deductible is calculated separately for, and applies separately to:

1. Each building, if two or more buildings sustain loss or damage;
2. The building and to personal property in that building, if both sustain loss or damage;
3. Personal property at each building, if personal property at two or more buildings sustains loss or damage; and
4. Personal property in the open.

We will not pay for loss or damage until the amount of loss or damage exceeds the Deductible. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit(s) of Insurance.

When property is covered under the Coverage Extension for Newly Acquired Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at the time of loss. The applicable percentage for Newly Acquired Property is the highest percentage shown in the Schedule for any described premises.

**EXAMPLE – APPLICATION OF DEDUCTIBLE:**

The amounts of loss to the damaged property are $60,000 (building) and $40,000 (business personal property in building).

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the business personal property.

 © ISO Properties, Inc., 2004 

The Deductible is 2%.

**Building**

Step (1): $80,000 X 2% = $1,600

Step (2): $60,000 – $1,600 = $58,400

**Business Personal Property**

Step (1): $64,000 X 2% = $1,280

Step (2): $40,000 – $1,280 = $38,720

The most we will pay is $97,120 ($58,400 + $38,720). The portion of the total loss that is not covered due to the application of the Deductible is $2,880 ($1,600 + $1,280).


© ISO Properties, Inc., 2004

POLICY NUMBER: 1000051837131

BUSINESSOWNERS
BP 04 04 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

| Coverage | Additional Premium |
|---|---|
| A. Hired Auto Liability: | $ 92 |
| B. Non-Owned Auto Liability: | $ 138 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

1. **Hired Auto Liability**

   The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability,** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

2. **Non-Owned Auto Liability**

   The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability,** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

B. For insurance provided by this endorsement only:

1. The exclusions, under the Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II – Liability,** other than Exclusions **a., b., d., f.** and **i.** and the Nuclear Energy Liability Exclusion, are deleted and replaced by the following:

   a. "Bodily injury" to:

   (1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

   (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

   This exclusion applies:

   (1) Whether the insured may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

   This exclusion does not apply to:

   (1) Liability assumed by the insured under an "insured contract"; or

   (2) "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

   b. "Property damage" to:

   (1) Property owned or being transported by, or rented or loaned to the insured; or

   (2) Property in the care, custody or control of the insured.


© ISO Properties, Inc., 2004

2. Paragraph **C. Who Is An Insured in Section II – Liability,** is replaced by the following:
   1. Each of the following is an insured under this endorsement to the extent set forth below:
      a. You;
      b. Any other person using a "hired auto" with your permission;
      c. For a "non-owned auto":
         (1) Any partner or "executive officer" of yours; or
         (2) Any "employee" of yours

         but only while such "non-owned auto" is being used in your business; and
      d. Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.
   2. None of the following is an insured:
      a. Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;
      b. Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;
      c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;
      d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or
      e. Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

C. The following additional definitions apply:
   1. "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".
   2. "Hired Auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.
   3. "Non-Owned Auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

 © ISO Properties, Inc., 2004 

POLICY NUMBER: 1000051837131

BUSINESSOWNERS
BP 04 56 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

| Prem. No. | Bldg. No. | Utility Services Limit Of Insurance | Water Supply Property (Check If Applies) | Communication Supply Property | Power Supply Property |
|---|---|---|---|---|---|
| | | | | Enter Either "Includes" Or "Not Includes" Overhead Transmission Lines (If Applicable) | |
| 1 | 1 | $ 10,000 | X | Not Includes | Not Includes |
| Covered Property: Building | | | | | |
| | | $ | | | |
| Covered Property: | | | | | |
| | | $ | | | |
| Covered Property: | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

The coverage provided by this endorsement is subject to the provisions of Section I – Property, including Paragraph D. Deductibles, except as provided below.

A. The following is added to Paragraph A. **Coverage:**

We will pay for loss of or damage to Covered Property described in the Schedule, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph C. of this endorsement if such property is indicated by an "X" in the Schedule and is located outside of a covered building described in the Declarations.

B. **Exception**

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to "electronic data", including destruction or corruption of "electronic data".

C. **Utility Services**

1. Water Supply Services, meaning the following types of property supplying water to the described premises:

   a. Pumping stations; and

   b. Water mains.


© ISO Properties, Inc., 2004

2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

   a. Communication transmission lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission lines.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

D. Paragraph **C. Limits Of Insurance** is replaced by the following:

   If a Utility Services Limit of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property.

   If no Limit of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit of Insurance on the Covered Property as shown in the Declarations. But this Utility Services Endorsement does not increase the applicable Limit of Insurance.

 © ISO Properties, Inc., 2004 

POLICY NUMBER:1000051837131

BUSINESSOWNERS
BP 04 57 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTILITY SERVICES – TIME ELEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

| Prem. No. | Bldg. No. | Utility Services Limit Of Insurance | Water Supply Property (Check If Applies) | Communication Supply Property | Power Supply Property |
|---|---|---|---|---|---|
| | | | | Enter Either "Includes" Or "Not Includes" Overhead Transmission Lines (If Applicable) | |
| 1 | 1 | $ 10,000 | X | | Not Includes |
| **Covered Property:** Building | | | | | |
| 1 | 1 | $ 10,000 | X | | Not Includes |
| **Covered Property:** Personal Property | | | | | |
| | | $ | | | |
| **Covered Property:** | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

The coverage provided by this endorsement is subject to the provisions of Section I – Property Coverages, except as provided below.

A. The following is added to Paragraph **A. Coverage:**

We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **C.** of this endorsement if such property is indicated by an "X" in the Schedule and is located outside of a covered building described in the Declarations.

B. **Exception**

Coverage under this endorsement does not apply to Business Income loss or Extra Expense related to interruption in utility service which causes loss or damage to "electronic data", including destruction or corruption of "electronic data".

C. **Utility Services**

1. Water Supply Services, meaning the following types of property supplying water to the described premises:

   a. Pumping stations; and

   b. Water mains.


© ISO Properties, Inc., 2004

2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:
   a. Communication transmission lines, including optic fiber transmission lines;
   b. Coaxial cables; and
   c. Microwave radio relays except satellites.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.
3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:
   a. Utility generating plants;
   b. Switching stations;
   c. Substations;
   d. Transformers; and
   e. Transmission lines.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

D. Paragraph **C. Limits Of Insurance** is replaced by the following:

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Schedule as applicable to the Covered Property.

 © ISO Properties, Inc., 2004 

POLICY NUMBER: 1000051837131

BUSINESSOWNERS
BP 04 59 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN PROTECTION COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

| | | | | |
|---|---|---|---|---|
| **A.** | **Premises:** 1 1 | | | |
| **B.** | **Equipment Breakdown Protection Sub-limit:** $ | | | |
| **C.** | **Deductible(s):** | | | |
| | 1. Equipment Breakdown Protection Deductible: | $ 500 | | (if different than the Section I – Property Deductible) |
| | 2. Business Income Time Deductible: | | Hours | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**Section I – Property** is amended as follows:

A. We will pay for direct loss of or damage to Covered Property at the premises described in the Schedule caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

1. Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;
2. Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;
3. Damage to any vacuum tube, gas tube, or brush; or
4. The functioning of any safety or protective device.

B. With respect to the coverage provided by this endorsement, the following exclusions in Paragraph **B. Exclusions** do not apply:

1. Paragraph **B.2.a. Electrical Apparatus;**
2. Paragraph **B.2.l.(6) Mechanical Breakdown;** and
3. Paragraph **B.2.d. Steam Apparatus.**

C. With respect to the coverage provided by this endorsement, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

D. The following limitations in Paragraph **A.4. Limitations** do not apply:

1. Paragraph **A.4.a.(1)** relating to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment;
2. Paragraph **A.4.a.(2)** relating to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

 © ISO Properties, Inc., 2004 

E. We will not pay for loss or damage (hereinafter referred to as loss) in any one occurrence until the amount of loss exceeds the Equipment Breakdown Protection Coverage deductible shown in the Schedule for any loss to Covered Property caused by mechanical breakdown or electrical failure.

1. With respect to the dollar deductible shown in the Schedule, we will first subtract the deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the deductible up to the sub-limit shown in the Schedule.
2. If a time deductible is shown in the schedule, we will not pay for any Business Income loss that occurs during that specified time period immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean twenty-four consecutive hours.
3. If two or more deductibles apply to a loss involving both a cause of loss covered in this endorsement and another cause of loss covered in this policy for a single occurrence, then the total amount to be deducted will be only the largest of the applicable deductibles.

F. With respect to the coverage provided by this endorsement, Paragraph **H. Property Definitions** is amended as follows:

1. "Computer" means:
   a. Programmable electronic equipment that is used to store, retrieve and process data; and
   b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

   "Computer" includes those used to operate production type machinery or equipment.

G. With respect to **Additional Coverages 5.f. Business Income and 5.g. Extra Expense**, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as waiting period) is amended for Equipment Breakdown Protection Coverage as shown in the Schedule, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the waiting period in the Schedule immediately following a mechanical breakdown or electrical failure.

As respects the coverage provided by this endorsement, any waiting period shown in the Schedule for Equipment Breakdown Protection Coverage supersedes any waiting period otherwise applicable to the Business Income coverage provided by the Businessowners Coverage form.

H. The provisions of this coverage shall not increase any amount or Limit of Insurance that is otherwise provided in this policy. The most we will pay for any loss or damage for Equipment Breakdown Protection is the amount of the sub-limit shown in the Schedule of this Endorsement.

I. Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment. This can be done by delivering or mailing a written notice of suspension to:

1. Your last known address; or
2. The address where the pressure, mechanical or electrical machinery and equipment is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

 © ISO Properties, Inc., 2004 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

A. The exclusion set forth in Paragraph **B.** applies to all coverage under **Section I – Property** in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

C. However, the exclusion in Paragraph **B.** does not apply to the following:

1. Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or
2. Coverage otherwise provided under Food Contamination Endorsement **BP 04 31** (if that endorsement is attached to this Businessowners Policy); or
3. Coverage otherwise provided under the Food Contamination Additional Coverage in Restaurants Endorsement **BP 07 78** (if that endorsement is attached to this Businessowners Policy).

D. With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

E. The following provisions in this Businessowners Policy are hereby amended to remove reference to bacteria:

1. Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and
2. Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

F. The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

 © ISO Properties, Inc., 2006 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

A. **Section I – Property** is amended as follows:

1. Paragraph **E.4.b. Legal Action Against Us** Property Loss Condition is replaced by the following:

   b. Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

2. Paragraph **E.5.g. Loss Payment** Property Loss Condition is replaced by the following:

   g. Provided you have complied with all the terms of this Policy, we will pay for covered loss or damage upon the earliest of the following:

   (1) Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

   (2) Within 30 days after we receive the sworn proof of loss and:

   (a) There is an entry of a final judgment; or

   (b) There is a filing of an appraisal award with us; or

   (3) Within 90 days of receiving notice of claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

   Paragraph **(3)** applies only to the following:

   (a) A claim under a policy covering residential property;

   (b) A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the policy covers only locations in Florida; or

   (c) A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the policy covers only locations in Florida.

3. Sinkhole Collapse Coverage Removed

   Throughout the policy Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement exclusion. Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **A.5.** of this endorsement.

   Further, this Policy does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

 © Insurance Services Office, Inc., 2010 

4. If windstorm is a Covered Cause of Loss, and Covered Property is located in:
   a. Monroe County; or
   b. East of the west bank of the Intra-Coastal Waterway in
      (1) Broward County;
      (2) Dade County;
      (3) Indian River County;
      (4) Martin County;
      (5) Palm Beach County; or
      (6) St. Lucie County,

   the following applies:

   If loss or damage to Covered Property is caused by or results from Windstorm, the following exclusion applies:

   **WINDSTORM EXTERIOR PAINT OR WATERPROOFING EXCLUSION**

   We will not pay for loss or damage caused by windstorm to:

   (1) Paint; or
   (2) Waterproofing material;

   applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

   When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

   (1) The amount of the Windstorm or Hail Deductible; or
   (2) The value of Covered Property.

5. The following is added to this Policy as a Covered Cause Of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

   **Catastrophic Ground Cover Collapse**

   We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

   (a) The abrupt collapse of the ground cover;
   (b) A depression in the ground cover clearly visible to the naked eye;
   (c) Structural damage to the building, including the foundation; and
   (d) The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

   However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

   The Earth Movement exclusion and the Collapse exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

   Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Policy), only one Limit of Insurance will apply to such loss or damage.

B. **Section III – Common Policy Conditions** is amended as follows:

   1. Paragraph **A.2. Cancellation** is replaced by the following:

      2. **Cancellation For Policies In Effect 90 Days Or Less**

         a. If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the Named Insured(s) written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

            (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
            (2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

               (a) A material misstatement or misrepresentation; or
               (b) A failure to comply with underwriting requirements established by the insurer.

         b. However, Paragraph **2.a.(2)** does not apply to a Named Insured whose residential structure has been insured by us or an affiliated insurer for at least a five-year period immediately prior to the date of written notice. Instead, refer to Paragraph **B.3.7.b.(4)** of this endorsement.

 © Insurance Services Office, Inc., 2010 

c. We may not cancel:

(1) On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(2) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole or clay shrinkage claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

(a) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

(3) Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

2. Paragraph **A.5. Cancellation** is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

3. The following is added to Paragraph **A. Cancellation:**

**7. Cancellation For Policies In Effect For More Than 90 Days**

a. If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) There has been a failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

(4) There has been a substantial change in the risk covered by the policy;

(5) The cancellation is for all insureds under such policies for a given class of insureds;

(6) On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

(7) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, or on the basis of the risk associated with the occurrence of such a claim, if:

(a) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

(8) On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the Named Insured(s) written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in Paragraphs **a.(2)** through **a.(8)** above; and

(b) This policy does not cover a residential structure or its contents; or

(3) 100 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in Paragraphs **a.(2)** through **a.(8)** above; and

(b) This policy covers a residential structure or its contents, unless Paragraph **7.b.(4)** applies.

However if cancellation is to become effective between June 1 and November 30, we will mail or deliver to the Named Insured(s) written notice of cancellation at least 100 days prior to the effective date of cancellation or by June 1, whichever is earlier. Therefore, when cancellation is to become effective between September 9 and November 30, we will mail or deliver to the Named Insured(s) written notice of cancellation by June 1.

(4) 180 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(8)** above; and

(b) The Named Insured's residential structure has been insured by us or an affiliated insurer for at least a five-year period immediately prior to the date of the written notice.

**4.** The following Paragraphs are added:

**M. Nonrenewal**

**1.** If we decide not to renew this policy we will mail or deliver to the Named Insured(s) written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

**a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents; or

**b.** 100 days prior to the expiration of the policy if this policy covers a residential structure or its contents, unless Subsection **c.** or **d.** applies.

**c.** If this policy covers a residential structure or its contents and nonrenewal is to become effective between June 1 and November 30, we will mail or deliver to the Named Insured(s) written notice of nonrenewal at least 100 days prior to the effective date of nonrenewal or by June 1, whichever is earlier. Therefore, when nonrenewal is to become effective between September 9 and November 30, we will mail or deliver to the Named Insured(s) written notice of nonrenewal by June 1. If nonrenewal is due to a revision to this policy's coverage for sinkhole losses or catastrophic ground cover collapse pursuant to the 2007 changes in the Florida Insurance Laws concerning such coverage, then this subsection **c.**, does not apply. Therefore, in such a case, Subsection **b.** or **d.** applies.

 © Insurance Services Office, Inc., 2010 

d. 180 days prior to the effective date of nonrenewal if the Named Insured's residential structure has been insured by us or an affiliated insurer for at least a five-year period immediately prior to the date of the written notice.

2. Any notice of nonrenewal will be mailed or delivered to the Named Insured(s) at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. We may not refuse to renew this policy:

a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

b. On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole or clay shrinkage claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may refuse to renew this policy if:

(1) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

c. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

4. Notwithstanding the provisions of Paragraph **B.4.M.3.**, we may refuse to renew this policy if this policy includes Sinkhole Loss coverage on property located in Pasco County or Hernando County. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to 2009 changes in the Florida Insurance Laws, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**N. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

1. The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

a. Except as provided in Paragraph **N.1.b.**, we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

b. We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

(1) Nonpayment of premium;

(2) Material misstatement or fraud related to the claim;

(3) We determine that you have unreasonably caused a delay in the repair of the structure; or

(4) We have paid the policy limits.

If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2)**, **b.(3)** or **b.(4)**, we will give you 45 days' notice.

 © Insurance Services Office, Inc., 2010 

2. With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

3. With respect to Paragraph **N.2.**, a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.


© Insurance Services Office, Inc., 2010

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA – SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when structural damage to the building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the building, only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and in consultation with you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and
2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

After you have entered into a contract for performance of building stabilization or foundation repair, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. If repair has begun and the aforementioned professional engineer determines that the repairs will exceed the applicable Limit of Insurance, we will pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or
2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the Earth Movement exclusion and the Collapse exclusion do not apply.

 © Insurance Services Office, Inc., 2009 

D. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation or appraisal procedure set forth elsewhere in this policy.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay the costs associated with the neutral evaluation, regardless of which party makes the request. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

E. Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

 © Insurance Services Office, Inc., 2009 

Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# STARR BUSINESSOWNERS ENHANCEMENTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The provisions of the Businessowners Coverage Form apply except as otherwise provided in this endorsement. This endorsement applies only if the Coverage Form and Parts named above are included in this policy. All numbers and letters used to designate paragraphs in this endorsement are specific to this endorsement only. They do not reference paragraphs in the Businessowners Coverage Form.

I. **Changes To Section I- Property**

A. The **Debris Removal** additional debris removal expense is increased to $25,000.

B. The **Business Income From Dependent Properties** limit is increased to $10,000 unless a higher limit is indicated on the declarations page.

C. The **Electronic Data** limit is increased to $15,000 unless a higher amount is shown on the Declarations Page.

D. The **Employee Dishonesty** limit is $25,000 unless a higher limit is shown on the Declarations Page.

E. The **Fire Department Service Charge** limit is increased to $25,000 unless a higher amount is shown on the Declarations Page.

F. The **Fire Extinguisher Recharge** limit is increased to $10,000 any one occurrence.

G. The **Increased Cost Of Construction** limit is increased to $25,000 for each damaged building.

H. The **Money Orders and "Counterfeit Money"** limit is increased to $2,000.

I. The **"Monies" and "Securities"** limit is $5,000 on premises and $2,000 off premises unless a higher amount is shown on the Declarations Page.

J. The **Newly Acquired Or Constructed Property Buildings** extension is increased to $500,000 each building.

K. The **Newly Acquired Or Constructed Property Business Personal Property** extension is increased to $250,000.

L. The **Newly Acquired Or Constructed Property Period of Coverage** extension is increased to 60 days.

M. The **Outdoor Signs** limit is $15,000 unless a higher amount is shown on the Declarations Page.

N. The **Pollution Clean-Up And Removal** limit at each location is increased to $25,000.


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

O. The following coverages are ADDED:

1. **Computer Fraud**

a. We will pay for loss of or damage to "money", "securities" and other property resulting directly from the use of any "computer" to fraudulently cause a transfer of property from inside a building at the described premises or from any bank or similar safe repository:

(1) To a person outside those premises; or
(2) To a place outside those premises.

b. The most we will pay in any one occurrence is $5,000.
c. We will cover loss or damage commencing within the policy period and within the coverage territory. The coverage territory for this coverage is anywhere in the world.

2. **Lock and Key Replacement**

a. We will pay for the cost to repair locks at the described premises due to the theft or loss of keys.
b. The most we will pay is $2,000 for all loss or damage in any one occurrence.
c. A per occurrence deductible of $100 will apply.

II. **Additional Changes to Section I – Property**

The coverages listed below are only applicable when there is a Declaration entry or Limit of Liability shown on the Declarations or Schedule.

A. **Appurtenant Structures**

Building coverage is extending to cover garages, storage buildings or other appurtenant structures situated on a name location. This coverage does not apply to outdoor fixtures. The most we will pay for this extension of coverage is $15,000.

B. **Water Back UP**

1. We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water or waterborne material which backs up from a sewer or drain.
2. The most we will pay for loss or damage in any one occurrence is $2,000 unless a higher amount is shown on the declarations page.
3. This coverage amends but does not change **Water** under **Exclusions of Section I – Property.**

III. **Changes to Section II- Liability**

A. The **Coverage Extension – Supplementary Payments** cost of bail bonds is increased to $1,000.

B. The definition of **Who Is An insured** is extended to Not For Profit Organizations to include as additional insureds your officials, board members and trustees.


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

C. The **Liability And Medical Expense Definitions** are amended to include "leased worker" and "temporary" worker.

D. The following coverage is ADDED:

1. **Blanket Additional Insureds- Including Broad Form Vendors- As Required By Contract**

a. **WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to:

(1) "Bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by your ongoing operations performed for that that person or organization "your product" or premises owned or used by you. However, this provision does not included any architects, engineers or surveyors with respect to any injury or damage caused, in whole or in part by the rendering or failure to render any professional services by or for you including:

(a) The preparing, approving, or failure to prepare or approve maps, shop drawing, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
(b) Supervisory, inspection, architectural or engineering activities.

(2) "Bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by your maintenance, operation or use of equipment, other than aircraft "auto" or watercraft rented or leased to you by such person or organization. A persons or organization's status as an additional insured under this endorsement ends when their written contract or written agreement with you for such rented or leased equipment ends. With respect to the insurance afforded to these additional insureds this policy does not apply to any "occurrence" which takes place after the equipment lease expires.

(3) "Bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by "your products" for which are distributed or sold in the regular course of a vendor's business, but the insurance afforded the vendor does not apply to:

(a) "Bodily injury" or "property damage for which the vendor is obligated to pay damages by reason of the assumption of liability in a written contract or written agreement; but this exclusion does not apply to liability for damages that the vendor would have in the absence of the written contract or agreement;
(b) Any express warranty unauthorized by you;
(c) Any physical or chemical change in the product made intentionally by the vendor;
(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and the repackaged in the original container;
(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product; or


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

(f) Products, which, after distribution or sale by you, have been labeled or re-labeled or used as a container or part of an ingredient of any other thing or substance by or for the vendor; but this insurance does not apply to any insured person or organization, from who you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

This coverage shall be excess with respect to the person or organization included as an additional insured by its provisions; any other insurance that person or organization has shall be primary with respect to this insurance, unless this coverage is required to be primary and/or not contributory in the contract, agreement or permit referred to above.

The provisions of this coverage extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the:

a. "Bodily injury" or "property damage" with respect to the vendor or as an additional insured, or
b. "Bodily injury", "property damage" or "personal and advertising injury" with respect to other additional insureds.

**IV. Added coverage to Section I – Property and Section II - Liability**

**A. Crisis Containment Coverage**

1. This coverage extends this policy to provide for "Crisis Containment Costs" in the event of a "Crisis". The most we will pay for any loss under this extension is $2,000 in any one "Crisis" and in the aggregate.
2. We will reimburse you those sums deemed reasonable and necessary as "Crisis Containment Costs" arising out of a "Crisis" directly related to "bodily injury" or "property damage" to which this insurance applies provided they are incurred within thirty (30) days after the commencement date of the "Crisis". The end of the policy period will not serve to reduce the length of this 30 day period.
3. **Coverage Definitions**

The following definitions apply solely to the coverage provided by this extension and supersede any similar definitions in the Businessowners policy.

a. "Adverse Publicity" means the negative reporting of a "Crisis" in local, regional or national media.
b. "Crisis" means an unstable or crucial time in your business resulting from a covered "bodily injury" or "property damage" loss that results in:

(1) Further "bodily injury" or "property damage";
(2) Interruption of your business or
(3) "Adverse Publicity"

c. "Crisis Management Firm" means the public relations firm or crisis management firm that is hired by you to perform services in response to a "Crisis".
d. "Crisis Containment Costs" mean those sums for reasonable and necessary expenses incurred by you in hiring a "Crisis Management Firm" to secure the scene of a "Crisis".


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

4. **What To Do In the Event Of A "Crisis"**

   a. Provide us with written notice as soon as practicable including:

      (1) How, when and where the "Crisis" took place.
      (2) The nature and location of the covered "bodily injury" or "property damage".
      (3) The name of the "Crisis Management Firm" used.

   b. Submit to us a claim for reimbursement of "Crisis Containment Costs" within ninety (90) days of incurring the "Crisis". Such claim must include invoices and/or receipts supporting the "Crisis Containment Costs" for each and every expense in excess of fifty (50) dollars.

   c. Written notice and claim submission should be sent to:

      **Starr Indemnity and Liability Company**
      **C/O Starr Adjustment Services Inc.**
      **3353 Peachtree Rd. NE**
      **Suite 1000**
      **Atlanta, GA 30326**

Signed for STARR INDEMNITY & LIABILITY COMPANY

Charles H. Dangelo, President

Nehemiah E. Ginsburg, General Counsel



Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Starr Indemnity & Liability Company
Businessowners

Policy Table of Contents

Businessowners Coverage Form (47 Pages)

I. Section I Property .......... 1

A. Coverage .......... 1
B. Exclusions .......... 15
C. Limits of Insurance .......... 19
D. Deductibles .......... 20
E. Property Loss Conditions...... 20
F. Property General Conditions .......... 24
G. Optional Coverages .......... 25
H. Property Definitions .......... 28

II. Section II Liability .......... 29

A. Coverage .......... 29
B. Exclusions .......... 32
C. Who is an Insured .......... 38
D. Liability and Medical Expenses Limits of Insurance .......... 39
E. Liability and Medical Expenses General Conditions .......... 40
F. Liability and Medical Expenses Definitions .......... 41

III. Section III Common Policy Conditions (Applicable to Section I Property & Section II Liability) .......... 44

A. Cancellation .......... 44
B. Changes .......... 45
C. Concealment, Misrepresentation Or Fraud .......... 45
D. Examination Of Your Books And Records .......... 45
E. Inspections And Surveys .......... 45
F. Insurance Under Two Or More Coverages .......... 45
G. Liberalization .......... 46
H. Other Insurance .......... 46
I. Premiums .......... 46
J. Premium Audit .......... 46
K. Transfer Of Rights Of Recovery Against Others To Us .......... 46
L. Transfer Of Your Rights And Duties Under This Policy .......... 47


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section II – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b)**;

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2)**; and

(5) Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

 © Insurance Services Office, Inc., 2009 

**2. Property Not Covered**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

(1) Money And Securities Optional Coverage; or

(2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

h. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

i. "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph i. does not apply to your "stock" of prepackaged software.

j. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Risks of direct physical loss unless the loss is:

a. Excluded in Paragraph B. Exclusions in Section I; or

b. Limited in Paragraph 4. Limitations in Section I.

**4. Limitations**

a. We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

 © Insurance Services Office, Inc., 2009 

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to Paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) **Examples**

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense | |
| Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

 © Insurance Services Office, Inc., 2009 

**Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500). The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

(1) For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

(2) We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

(a) Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

(d) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

(i) A cause of loss listed in Paragraph (2)(a) or (2)(b);

(ii) One or more of the "specified causes of loss";

(iii) Breakage of building glass;

 © Insurance Services Office, Inc., 2009 

(iv) Weight of people or personal property; or

(v) Weight of rain that collects on a roof.

(3) This Additional Coverage – Collapse does **not** apply to:

(a) A building or any part of a building that is in danger of falling down or caving in;

(b) A part of a building that is standing, even if it has separated from another part of the building; or

(c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

(5) If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

(8) The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

(a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.


© Insurance Services Office, Inc., 2009

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

(ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

(d) Ordinary payroll expenses:

(i) Means payroll expenses for all your employees except:

i. Officers;

ii. Executives;

iii. Department Managers;

iv. Employees under contract; and

v. Additional Exemptions shown in the Declarations as:

- Job Classifications; or
- Employees.

(ii) Include:

i. Payroll;

ii. Employee benefits, if directly related to payroll;

iii. FICA payments you pay;

iv. Union dues you pay; and

v. Workers' compensation premiums.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

ii. 30 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

 © Insurance Services Office, Inc., 2009 

(4) This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**g. Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue "operations".

(c) To:

(i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

 © Insurance Services Office, Inc., 2009 

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(1) Money orders issued by any post office, express company or bank that are not paid upon presentation; or

(2) "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

(4) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs (3) through (9) of this Additional Coverage.

(3) The ordinance or law referred to in Paragraph (2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

 © Insurance Services Office, Inc., 2009 

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

(b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I – Property do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph (6) of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

(a) Source of materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

 © Insurance Services Office, Inc., 2009 

(4) Dependent property means property owned by others whom you depend on to:

(a) Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) The coverage period for Business Income under this Additional Coverage:

(a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

(b) Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(6) The Business Income coverage period, as stated in Paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

(7) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

(1) We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

(2) We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

(1) We will pay:

(a) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

(b) For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

(1) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2009 

(3) The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**q. Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(b) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(4) This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

(5) Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

 © Insurance Services Office, Inc., 2009 

(6) Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

(1) The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

(a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

 © Insurance Services Office, Inc., 2009 

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section I – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at premises other than the one described, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

(a) Business Personal Property, including such property that you newly acquire, at any location you acquire;

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(c) Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

 © Insurance Services Office, Inc., 2009 

d. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:

(1) Tools or equipment used in your business; or

(2) Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

e. **Valuable Papers And Records**

(1) You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

(2) This Coverage Extension does not apply to:

(a) Property held as samples or for delivery after sale; and

(b) Property in storage away from the premises shown in the Declarations.

(3) The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

(4) Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

(5) Paragraph **B.** Exclusions in Section I – Property does not apply to this Coverage Extension except for:

(a) Paragraph **B.1.c.**, Governmental Action;

(b) Paragraph **B.1.d.**, Nuclear Hazard;

(c) Paragraph **B.1.f.**, War And Military Action;

(d) Paragraph **B.2.f.**, Dishonesty;

(e) Paragraph **B.2.g.**, False Pretense;

(f) Paragraph **B.2.m.(2)**, Errors Or Omissions; and

(g) Paragraph **B.3.**

f. **Accounts Receivable**

(1) You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

(3) Paragraph **B.** Exclusions in Section I – Property does not apply to this Coverage Extension except for:

(a) Paragraph **B.1.c.**, Governmental Action;

(b) Paragraph **B.1.d.**, Nuclear Hazard;

(c) Paragraph **B.1.f.**, War And Military Action;

(d) Paragraph **B.2.f.**, Dishonesty;

(e) Paragraph **B.2.g.**, False Pretense;

(f) Paragraph **B.3.**; and

(g) Paragraph **B.6.**, Accounts Receivable Exclusion.

 © Insurance Services Office, Inc., 2009 

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

a. **Ordinance Or Law**

(1) The enforcement of any ordinance or law:

(a) Regulating the construction, use or repair of any property; or

(b) Requiring the tearing down of any property, including the cost of removing its debris.

(2) This exclusion, Ordinance Or Law, applies whether the loss results from:

(a) An ordinance or law that is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

b. **Earth Movement**

(1) Earthquake, including any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

(1) The failure, malfunction or inadequacy of:

(a) Any of the following, whether belonging to any insured or to others:

(i) "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

(ii) "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

(iii) "Computer" operating systems and related software;

(iv) "Computer" networks;

(v) Microprocessors ("computer" chips) not part of any "computer" system; or

(vi) Any other computerized or electronic equipment or components; or

(b) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

 © Insurance Services Office, Inc., 2009 

However, if excluded loss or damage, as described in Paragraph (1) above results in a "specified cause of loss" under Section I – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph (1)(a) or (1)(b) to correct any deficiencies or change any features.

i. **"Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet rot or dry rot result from fire or lightning; or

(2) To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

j. **Virus Or Bacteria**

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in Paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.;

(3) With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. **Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;

(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(3) Pulse of electromagnetic energy; or

(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or

(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

b. **Consequential Losses**

Delay, loss of use or loss of market.

c. **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

d. **Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e. **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

f. **Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

g. **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

h. **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

i. **Collapse**

(1) Collapse, including any of the following conditions of property or any part of the property:

(a) An abrupt falling down or caving in;

(b) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(c) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

(2) This Exclusion **i.**, does not apply:

(a) To the extent that coverage is provided under the Additional Coverage – Collapse; or

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property.

j. **Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

k. **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

l. **Other Types Of Loss**

(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

 © Insurance Services Office, Inc., 2009 

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

m. **Errors Or Omissions**

Errors or omissions in:

(1) Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

(2) Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

n. **Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

o. **Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I – Property.

However, we will pay for direct loss or damage caused by lightning.

p. **Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3. We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

b. **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. **Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

4. **Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion.

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

5. **Business Income And Extra Expense Exclusions**

a. We will not pay for:

(1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

(2) Any other consequential loss.

b. With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

6. **Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

c. Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of Section I – Property shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I – Property:

a. Fire Department Service Charge;

b. Pollutant Clean-up And Removal;

c. Increased Cost Of Construction;

d. Business Income From Dependent Properties;

e. Electronic Data; and

f. Interruption Of Computer Operations.

4. **Building Limit – Automatic Increase**

a. In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

b. The amount of increase is calculated as follows:

(1) Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit by:

(a) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

(b) .08, if no percentage of annual increase is shown in the Declarations; and

(2) Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example:**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

5. **Business Personal Property Limit – Seasonal Increase**

a. Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

(1) The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

(2) 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

 © Insurance Services Office, Inc., 2009 

b. The increase described in Paragraph 5.a will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I – Property.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

a. Money and Securities;

b. Employee Dishonesty;

c. Outdoor Signs; and

d. Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

a. Fire Department Service Charge;

b. Business Income;

c. Extra Expense;

d. Civil Authority; and

e. Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

 © Insurance Services Office, Inc., 2009 

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

5. **Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. Except as provided in Paragraphs (2) through (7) below, we will determine the value of Covered Property as follows:

(1) At replacement cost without deduction for depreciation, subject to the following:

(a) If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(i) The Limit of Insurance under Section I – Property that applies to the lost or damaged property;

(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

i. Of comparable material and quality; and

ii. Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

(b) If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

(i) The actual cash value of the lost or damaged property; or

(ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

 © Insurance Services Office, Inc., 2009 

(c) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(d) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

(e) The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

(2) If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Used or secondhand merchandise held in storage or for sale;

(b) Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts; and

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

(6) Applicable only to the Optional Coverages:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

(7) Applicable only to Accounts Receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

 © Insurance Services Office, Inc., 2009 

(ii) We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to reestablish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

 © Insurance Services Office, Inc., 2009 

**8. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.


© Insurance Services Office, Inc., 2009

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

3. **No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

4. **Policy Period, Coverage Territory**

Under Section I – Property:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1. **Outdoor Signs**

a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

(1) Owned by you; or

(2) Owned by others but in your care, custody or control.

b. Paragraph **A.3.**, Covered Causes Of Loss, and Paragraph **B.**, Exclusions in Section I – Property, do not apply to this Optional Coverage, except for:

(1) Paragraph **B.1.c.**, Governmental Action;

(2) Paragraph **B.1.d.**, Nuclear Hazard; and

(3) Paragraph **B.1.f.**, War And Military Action.

c. We will not pay for loss or damage caused by or resulting from:

(1) Wear and tear;

(2) Hidden or latent defect;

(3) Rust;

(4) Corrosion; or

(5) Mechanical breakdown.

d. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

2. **Money And Securities**

a. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

b. In addition to the Limitations and Exclusions applicable to Section I – Property, we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

 © Insurance Services Office, Inc., 2009 

c. The most we will pay for loss in any one occurrence is:

(1) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

(a) In or on the described premises; or

(b) Within a bank or savings institution; and

(2) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

d. All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

3. **Employee Dishonesty**

a. We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

(1) Cause you to sustain loss or damage; and also

(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(a) Any employee; or

(b) Any other person or organization.

b. We will not pay for loss or damage:

(1) Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

(2) Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

(a) Whether acting alone or in collusion with other persons; or

(b) While performing services for you or otherwise.

(3) The only proof of which as to its existence or amount is:

(a) An inventory computation; or

(b) A profit and loss computation.

c. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

d. All loss or damage:

(1) Caused by one or more persons; or

(2) Involving a single act or series of acts;

is considered one occurrence.

e. If any loss is covered:

(1) Partly by this insurance; and

(2) Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

f. This Optional Coverage is cancelled as to any employee immediately upon discovery by:

(1) You; or

(2) Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

g. We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

h. If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

 © Insurance Services Office, Inc., 2009 

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

(1) This Optional Coverage as of its effective date; or

(2) The prior insurance had it remained in effect.

j. With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

(1) Any natural person:

(a) While in your service or for 30 days after termination of service;

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent employee as defined in Paragraph (1) above, who is on leave; or

(b) To meet seasonal or short-term workload conditions;

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph (2) above;

(4) Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

(5) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

(1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

4. **Equipment Breakdown Protection Coverage**

a. We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

(1) Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

(2) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(3) Damage to any vacuum tube, gas tube, or brush; or

(4) The functioning of any safety or protective device.

b. Paragraphs **A.4.a.(1)** and **A.4.a.(2), Limitations,** do not apply to this Optional Coverage.

c. With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

(1) Paragraph **B.2.a. Electrical Apparatus;**

(2) Paragraph **B.2.d. Steam Apparatus;** and

(3) Paragraph **B.2.l.(6) Mechanical Breakdown.**

d. With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

e. If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

 © Insurance Services Office, Inc., 2009 

f. With respect to **Additional Coverages 5.f. Business Income** and **5.g. Extra Expense**, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

   As respects the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

g. With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

   1. "Computer" means:

      a. Programmable electronic equipment that is used to store, retrieve and process data; and

      b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

   "Computer" includes those used to operate production type machinery or equipment.

h. Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

   However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

   We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

   (1) Your last known address; or

   (2) The address where the pressure, mechanical or electrical machinery and equipment is located.

   This notification will indicate the effective date of the suspension or reinstatement.

   If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

## H. Property Definitions

1. "Computer" means:

   a. Programmable electronic equipment that is used to store, retrieve and process data; and

   b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

   "Computer" does not include those used to operate production type machinery or equipment.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

4. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Manager" means a person serving in a directorial capacity for a limited liability company.

6. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

 © Insurance Services Office, Inc., 2009 

7. "Money" means:
   a. Currency, coins and bank notes in current use and having a face value; and
   b. Travelers checks, register checks and money orders held for sale to the public.
8. "Operations" means your business activities occurring at the described premises.
9. "Period of restoration":
   a. Means the period of time that:
      (1) Begins:
         (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
         (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and
      (2) Ends on the earlier of:
         (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
         (b) The date when business is resumed at a new permanent location.
   b. Does not include any increased period required due to the enforcement of any ordinance or law that:
      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or
      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".
10. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
11. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:
   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and
   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".
12. "Specified causes of loss" means the following:

   Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.
   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:
      (1) The cost of filling sinkholes; or
      (2) Sinking or collapse of land into man-made underground cavities.
   b. Falling objects does not include loss of or damage to:
      (1) Personal property in the open; or
      (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.
   c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.
13. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.
14. "Valuable papers and records" means inscribed, printed or written:
   a. Documents;
   b. Manuscripts; and
   c. Records;

   including abstracts, books, deeds, drawings, films, maps or mortgages.

   But "valuable papers and records" does not mean "money" or "securities".

 © Insurance Services Office, Inc., 2009 

## SECTION II – LIABILITY

### A. Coverages

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © Insurance Services Office, Inc., 2009  □

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

f. **Coverage Extension – Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

(a) All expenses we incur.

(b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

(c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

(e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

(a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(b) This insurance applies to such liability assumed by the insured;

(c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

(e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(f) The indemnitee:

(i) Agrees in writing to:

i. Cooperate with us in the investigation, settlement or defense of the "suit";

ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

iii. Notify any other insurer whose coverage is available to the indemnitee; and

iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii) Provides us with written authorization to:

i. Obtain records and other information related to the "suit"; and

ii. Conduct and control the defense of the indemnitee in such "suit".

 © Insurance Services Office, Inc., 2009 

(3) So long as the conditions in Paragraph (2) are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section II – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in Paragraph (2)(f) above are no longer met.

**2. Medical Expenses**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section II – Liability. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

 © Insurance Services Office, Inc., 2009 

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

 © Insurance Services Office, Inc., 2009 

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

 © Insurance Services Office, Inc., 2009 

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

(b) The operation of any of the following machinery or equipment:

(i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. **Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

 © Insurance Services Office, Inc., 2009 

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

 © Insurance Services Office, Inc., 2009 

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(7) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(8) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of websites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

(10) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

 © Insurance Services Office, Inc., 2009 

r. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

s. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section II – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section II – Liability.

2. **Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. To any insured, except "volunteer workers".

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

f. Included within the "products-completed operations hazard".

g. Excluded under Business Liability Coverage.

3. **Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

a. Under Business Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

(1) The "nuclear material":

(a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

 © Insurance Services Office, Inc., 2009 

(b) Has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

d. As used in this exclusion:

(1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(2) "Hazardous properties" include radioactive, toxic or explosive properties;

(3) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium;

(ii) Processing or utilizing "spent fuel"; or

(iii) Handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(4) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(5) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property;

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(10) "Waste" means any waste material:

(a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(b) Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs (a) and (b) of the definition of "nuclear facility".

## C. Who Is An Insured

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

 © Insurance Services Office, Inc., 2009 

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (a) or (b); or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

1. The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all:

a. "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

b. "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.


© Insurance Services Office, Inc., 2009

3. The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

4. **Aggregate Limits**

   The most we will pay for:

   a. All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

   b. All:

      (1) "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

      (2) Plus medical expenses;

      (3) Plus all "personal and advertising injury" caused by offenses committed;

      is twice the Liability and Medical Expenses limit.

   Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

   The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this policy:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this policy unless all of its terms have been fully complied with.

 © Insurance Services Office, Inc., 2009 

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Separation Of Insureds**

Except with respect to the Limits of Insurance of Section II – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

(1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2) Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

 © Insurance Services Office, Inc., 2009 

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

 © Insurance Services Office, Inc., 2009 

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

 © Insurance Services Office, Inc., 2009 

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

## SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

        (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

            (a) Seasonal unoccupancy; or

            (b) Buildings in the course of construction, renovation or addition.

            Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

        (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

            (a) Have not started, and

            (b) Have not been contracted for,

            within 30 days of initial payment of loss.

        (3) The building has:

            (a) An outstanding order to vacate;

 © Insurance Services Office, Inc., 2009 

(b) An outstanding demolition order; or

(c) Been declared unsafe by governmental authority.

(4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

(5) Failure to:

(a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

(b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe and healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

 © Insurance Services Office, Inc., 2009 

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.
2. Business Liability Coverage is excess over:
   a. Any other insurance that insures for direct physical loss or damage; or
   b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.
3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

1. The first Named Insured shown in the Declarations:
   a. Is responsible for the payment of all premiums; and
   b. Will be the payee for any return premiums we pay.
2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.
3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:
   a. Paid to us prior to the anniversary date; and
   b. Determined in accordance with Paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.
4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.
2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.
3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

1. Applicable to Businessowners Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:
   a. Prior to a loss to your Covered Property.
   b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:
      (1) Someone insured by this insurance;
      (2) A business firm:
         (a) Owned or controlled by you; or
         (b) That owns or controls you; or
      (3) Your tenant.


© Insurance Services Office, Inc., 2009

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.


© Insurance Services Office, Inc., 2009

# Starr Indemnity & Liability Company

Dallas, Texas
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

## Businessowners Policy

Named Insured: FRED J. FOX JR. & ROBERT A. FOX

Policy Number: 1000051837131

Effective Date: 08/20/2013 at 12:01 A.M.

This Policy is a legal contract between the Named Insured and Starr Indemnity & Liability Company, a Stock Company, (herein referenced as "the Company"). The Company agrees to provide insurance to the Named Insured, in exchange for the payment of the required premium. Coverage is subject to the terms and conditions described in this Policy.

This Policy and the coverage provided by it become effective at 12:01 A.M. at the address of the Named Insured on the Policy Effective Date shown above. It continues in effect in accordance with the provisions set forth in this Policy.

This Policy is governed by the laws of the state where it was delivered.

IN WITNESS WHEREOF, we have cause this Policy to be signed and countersigned where required by law on the Declarations by our duly Authorized representative.

Signed for STARR INDEMNITY & LIABILITY COMPANY

Charles H. Dangelo, President

Nehemiah E. Ginsburg, General Counsel


Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.

STARR COMPANIES
GLOBAL INSURERS SINCE 1919

# Starr Indemnity & Liability Company – Businessowners Policy Claim Reporting Guidelines

**Please Send All Businessowners Policies Related Liability Loss Notices To our Claims Administrator:**

York Claims Services, Inc.
c/o York Claims Intake
99 Cherry Hill Road
Parsippany, NJ 07054

**Claims E-mail:** 6599starrbop@yorkrsg.com

**Claims Telephone:** 866-391-YORK (9675)

**Claims Fax:** (973) 404-1040

Our preferred method of reporting is by email but Loss Notices may be submitted via certified mail or faxed. If immediate attention is needed, e-mailing or faxing the Loss Notice and/or Claim or Litigation information is strongly recommended.

**Consult Your Policy For Loss Reporting Requirements**

Your policy states when to report a loss and details the information to be submitted with a First Notice of Loss. This is often found in the General Conditions section, although it may be changed by an endorsement. Additionally, the following information/documentation will always be helpful in assisting us with our evaluation.

- Citing Starr Indemnity's policy, or claim number, in all correspondence.
- Providing a copy of any suit, demand for arbitration or mediation, a governmental agency notice, claim letter or any similar notice.
- Sending a copy of any internal reports related to the loss.
- Forwarding copies of status reports prepared by your defense counsel and/or your claim handler, if the case has been pending for a period of time.

Our Claims Administrator will acknowledge each First Notice of Loss, initiate contact to open lines of communication, and will request any additional information that may be needed. The formal claims acknowledgment will identify the person responsible for handling your reported Claim, and their specific contact information.

If you have questions or would like to discuss a specific loss with one of our Claims Team members, please feel free to contact us. Thank you.

## Civil Remedy Notice of Insurer Violations

Filing Number: **266735**

Filing Accepted: **9/9/2014**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **FRED FOX** |
| Street Address: | **4401 W. PLATT STREET** |
| City, State Zip: | **TAMPA, FL 33609** |
| Email Address: | |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **FRED FOX** |
| Policy #: | **1000051837131** |
| Claim #: | **CSBP-0143A9** |

### Attorney

| | |
|---|---|
| Name: | **KRISTIN DEMERS-CROWELL** |
| Street Address: | **117 S. WILLOW AVENUE** |
| City, State Zip: | **TAMPA, FL 33606** |
| Email Address: | **KDC@LIGORILAW.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **STARR INDEMNITY & LIABILITY COMPANY** |
| Street Address: | |
| City, State Zip: | **,** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

Type of Insurance: **Commercial Property & Casualty**



EXHIBIT
tabbies
Composite
B

## Civil Remedy Notice of Insurer Violations

Filing Number: **266735**

### Reason for Notice

Reasons for Notice:

**Claim Delay**

---

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.** |
| 626.9541(1)(i)(3)(b) | **Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.** |
| 626.9541(1)(i)(3)(c) | **Failing to acknowledge and act promptly upon communications with respect to claims.** |
| 626.9541(1)(i)(3)(e) | **Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed.** |
| 626.9541(1)(i)(3)(f) | **Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement.** |
| 626.9541(1)(i)(3)(g) | **Failing to promptly notify the insured of any additional information necessary for the processing of a claim.** |
| 626.9541(1)(i)(3)(h) | **Failing to clearly explain the nature of the requested information and the reasons why such information is necessary.** |

---

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

- BUILDING COVERAGE
- BUSINESS INCOME COVERAGE
- ALL ADDITIONAL COVERAGE PROVISIONS
- ALL COVERAGE PROVIDED BY ENDORSEMENT OR RIDER
- THE DECLARATIONS PAGE
- LOSS PAYMENT OR SETTLEMENT PROVISION
- DUTIES IN EVENT OF LOSS POLICY PROVISION
- THE INSURANCE POLICY'S DEFINITION SECTION
- THE INSURANCE POLICY'S EXCLUSION OF COVERAGE PROVISIONS
- ALL INSURANCE POLICY PROVISIONS THAT PROVIDE COVERAGE TO THE INSURED PROPERTY

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

THIS CLAIM INVOLVES THE INSUREDS, FRED J. FOX AND ROBERT A. FOX'S, (COMMERCIAL) PROPERTY LOCATED AT 502 N. GILCHRIST STREET, TAMPA, FL 33606, WHICH SUSTAINED DAMAGES AS A RESULT OF A COVERED FIRE LOSS ON OR ABOUT APRIL 19, 2014. THE INSUREDS TIMELY REPORTED THE LOSS TO THEIR COMMERCIAL INSURANCE COMPANY, STARR INDEMNITY & LIABILITY COMPANY ("STARR") AND THE CLAIM WAS ASSIGNED CLAIM NUMBER CSBP-0143A9.

THE INSURER TOOK 90 DAYS FROM THE DATE OF LOSS TO PROVIDE AN ESTIMATE AND ADVANCED PAYMENT ON THE BUILDING. AS OF THIS DATE, THE INSURER HAS NOT PROVIDED ANY FURTHER REVISION, PAYMENTS OR INFORMATION TO MOVE THE CLAIM TOWARDS SETTLEMENT.

FURTHER, THE INSURER BROUGHT OUT AN ELECTRICIAN TO INSPECT ELECTRICAL DAMAGE FOR THE FIRST TIME ON AUGUST 6, 2014. THE INSURER HAS FAILED TO PROPERLY AND THOROUGHLY RECORD ALL DAMAGES TO THE BUILDING. THE ESTIMATE THAT WAS PROVIDED BY THE INSURER IS IN A JUMBLED STATE WHICH NEGATIVELY IMPACTS THE INSUREDS' ABILITY TO UNDERSTAND WHAT THE ESTIMATE IS COVERING ON A UNIT COST BASIS. THIS PROCESS DEVIATES FROM THE STANDARD TRADITIONAL METHODS USED. THE ESTIMATE CREATED BY THE INSURER DOES NOT FLOW ORDERLY FROM ONE ROOM TO ANOTHER BUT INSTEAD BOUNCES FROM ONE AREA OF THE BUILDING TO AN OPPOSITE AREA OF THE BUILDING AND THEN BACK AGAIN THROUGHOUT THE ESTIMATE WHICH MAKES IT DIFFICULT FOR THE INSUREDS TO UNDERSTAND.

THE INSUREDS PROVIDED AN ESTIMATE OF THE DAMAGES TO THE INSURER IN THE AMOUNT OF $1,057,192.56. THE INSURER HAS FAILED TO TENDER INSURANCE BENEFITS ANYWHERE NEAR THIS SUM.

STARR INDEMNITY & LIABILITY COMPANY CAN CURE THE VIOLATIONS CONTAINED HEREIN BY IMMEDIATELY TENDERING TO THE INSUREDS ALL SUMS OWED UNDER THE POLICY, AND BY ADOPTING PROPER STANDARDS FOR THE FAIR AND PROMPT INVESTIGATION AND ADJUSTMENT OF CLAIMS.

## Comments

| User Id | Date Added | Comment |
|---|---|---|

CONROY SIMBERG

**MARC J. GUTTERMAN** | PARTNER
3440 HOLLYWOOD BOULEVARD, SECOND FLOOR
HOLLYWOOD, FL 33021
DIRECT (954) 518-1212
MAIN (954) 961-1400 BROWARD | (305) 940-4821 DADE
FAX 954-518-8612
mgutterman@conroysimberg.com

November 7, 2014

**Electronically Filed**

Florida Department of Financial Services
Civil Remedy Department
200 East Gaines Street
Tallahassee, Florida 32399

| | | | |
|---|---|---|---|
| Re: | Complainant | : | Fox, Fred |
| | Claim No. | : | CSBP-0143A9 |
| | D/Loss | : | 05/01/14 |
| | Our File No. | : | 142027 |
| | DFS Filing No. | : | 266735 |
| | Filing Accepted | : | 09/09/14 |

Dear Sir/Madam:

Please allow this correspondence to serve as Starr Indemnity & Liability Company's ("Starr") response to the Civil Remedy Notice of Insurer Violation ("Civil Remedy Notice") filed by Kristin Demers-Crowell, Esquire on behalf of Fred Fox, regarding the claim listed above.

Starr specifically denies each and every allegation of wrongdoing or statutory violation contained in the Civil Remedy Notice filed on this claim and requests the Civil Remedy Notice be rejected as it fails to comply with the requirements set forth in Florida Statute §624.155 and under Florida law.

The Civil Remedy Notice requires the complainant, "pursuant to section 624.155, F.S. please indicate all statutory provisions alleged to have been violated." The Civil Remedy Notice in this matter includes nearly every statutory provision that could be claimed against an insurance company regardless of whether they are relevant or applicable to the alleged facts contained in the Civil Remedy Notice. Because the Civil Remedy Notice fails to identify any specific statutes allegedly violated, Starr is unable to properly respond and the Civil Remedy Notice should be rejected.

Also, when asked to reference the specific policy language that is relevant to the violation, the insured merely listed all sections of the subject policy of insurance, regardless of whether they are relevant or applicable to the alleged facts contained in the Civil Remedy Notice. Because the Civil Remedy Notice fails to identify any policy language allegedly violated, Starr is unable to properly respond and the Civil Remedy Notice should be rejected.

The Civil Remedy Notice itself only provides inaccurate allegations and omissions with no basis in fact or circumstance. Notwithstanding the deficiencies in the Civil Remedy Notice, Starr denies it breached any duties to the insureds or violated the statutes cited. Specifically, Starr investigated the subject claim in good faith and with due regard to the insureds' interest, in full compliance with the subject insurance policy.

Starr contends that it has acted fairly, honestly, and in good faith at all times material hereto and has properly investigated and evaluated the loss in accordance with proper adjusting standards. The Civil Remedy Notice contains blanket, boiler plate allegations regarding the statutory provisions the insureds believe Starr has violated. The insureds have failed to provide any substantive evidence for these allegations or provide specific instances in which Starr has allegedly acted in "bad faith."

In closing, Starr requests that the Civil Remedy Notice be rejected due to its failure to comply with Florida Statute §624.155 and Florida law. Regardless of the rejection, Starr denies all allegations that it has breached any duties to the insureds or has violated any statutes.

We trust that this response addresses the issues alleged in the Civil Remedy Notice. Should you have any questions regarding this matter or need anything further, please do not hesitate to contact the undersigned.

With kindest regards,

*//s// Marc J. Gutterman*

Marc J. Gutterman

cc. **Via E-Mail: kdemers-crowell@ligorilaw.com**
**and**
**U.S. Mail**
Kristin Demers-Crowell, Esquire
Christopher N. Ligori & Associates
117 South Willow Avenue, Suite 100
Tampa, Florida 33606-1909

# Appraisal Of Insurance Claim-Award Form

- Insured: Robert Fox & Fred J. Fox Jr.
- Insurer: Star Indemnity & Liability Company
- Policy No.: 1000051837131
- Claim No: CSBP-0143A9
- Policy Location: 502 N. Gilchrist Ave, Tampa, FL 33606
- Date of Loss: 5/1/2014

## TO THE ABOVE-NAMED PARTIES AT INTEREST

We, the undersigned appraisers, have investigated and considered all the material facts and available information pertaining to this claim, and have decided on an Appraisal Award as described below, and with the attached detailed breakdown.

**COVERAGE A**

| Description | Award Amount |
|---|---|
| Replacement Cost Loss: | $930,041.36 |

****Per attached detailed breakdown**

This Appraisal Award shall be valid and binding upon all parties concerned if at least two of the three panel members concur in a decision, as evidenced by their signatures below.

This award is made without consideration of any deductible amount or other terms, conditions, provisions or exclusions of the above policy, which might affect the amount of the insurer's liability their under. Any previous monies paid will be deducted from the final payment.

All executed copies shall be considered as counterpart originals.

**WE AGREE TO THE ABOVE:**

DATE:______________________ ______________________ Appraiser: Newman, Art

DATE: 5/4/16 ______________________ Appraiser: James, Dennis

DATE: 5/12/16 ______________________ Umpire: Judge F. Dennis Alvarez

EXHIBIT

tabbies

C

( ) and ROBERT FOX APPRAISAL BREAKDO'

| SCOPE/CATEGORY | AMOUNT |
|---|---|
| Demolition | $ 39,351.10 |
| Clean/Odor Control | $ 38,875.94 |
| Ceiling Tiles | $ 15,139.37 |
| Insulation | $ 5,491.42 |
| Drywall | $ 40,483.04 |
| Framing repairs | $ 7,500.00 |
| Doors | $ 16,653.38 |
| Slab repairs | $ 3,843.30 |
| Vinyl Flooring | $ 20,330.61 |
| Vinyl Baseboards | $ 2,075.20 |
| Carpet | $ 5,476.56 |
| Stainless Steel/Wall | $ 28,780.71 |
| Paint | $ 25,936.66 |
| Shelving | $ 2,330.00 |
| Cabinets | $ 28,968.75 |
| Windows | $ 2,600.00 |
| Blinds | $ 1,050.00 |
| Glass | $ 4,800.00 |
| SS Door | $ 14,450.18 |
| Air Conditioning | $ 41,326.00 |
| Test & balance HVAC | $ 2,200.00 |
| Electrical | $ 135,233.00 |
| Plumbing | $ 21,077.58 |
| Gas | $ 1,500.00 |
| Exterior painting | $ 7,782.00 |
| Carport | $ 8,256.00 |
| Canapy | $ 346.50 |
| Steel | $ 18,153.00 |
| Roof | $ 135,000.00 |
| Dumpster | $ 6,525.00 |
| Lead/Asbestos tests | $ 2,150.00 |
| General Clean ups | $ 4,800.00 |
| Final Clean | $ 2,182.40 |
| **SUB- TOTAL** | **$ 690,667.70** |
| Contingency allowance | $ 34,533.38 |
| **SUB-TOTALS** | **$ 725,201.08** |
| GC'S, OSHA | $ 36,260.05 |
| PERMIT FEES | $ 6,906.67 |
| **SUB-TOTALS** | **$ 768,367.80** |
| OVER HEAD & PROFIT | $ 153,673.56 |
| **SUB-TOTALS** | **$ 922,041.36** |
| ENGINEERING | $ 8,000.00 |
| **TOTALS:** | **$ 930,041.36** |

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

---

### I. CASE STYLE

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

Case No.:________________
Judge: __________________

Fred Fox, Robert Fox
Plaintiff

vs.

Starr Indemnity & Liability Company
Defendant

---

### II. TYPE OF CASE

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999
  - ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more
- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☒ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☒ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**III.** **REMEDIES SOUGHT** (check all that apply):

☒ Monetary;
☐ Non-monetary
☐ Non-monetary declaratory or injunctive relief;
☐ Punitive

**IV.** **NUMBER OF CAUSES OF ACTION: (  )**
(Specify)

1

**V.** **IS THIS CASE A CLASS ACTION LAWSUIT?**

☐ Yes
☒ No

**VI.** **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**

☒ No
☐ Yes – If "yes" list all related cases by name, case number and court:

**VII.** **IS JURY TRIAL DEMANDED IN COMPLAINT?**

☒ Yes
☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Christopher N Ligori FL Bar No.: 11045
Attorney or party (Bar number, if attorney)

Christopher N Ligori 11/08/2016
(Type or print name) Date

**IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION**

FRED FOX and ROBERT FOX,

Plaintiff,

vs.

CASE NO.:_________

STARR INDEMNITY
& LIABILITY COMPANY,

DIVISION: _________

Defendant(s).
_________________________________/

**REQUEST FOR DIVISION ASSIGNMENT**

This is a request based on local Administrative Order(s) for the Clerk of the Court to assign the above styled case in the:

☒ Tampa Division

☐ East Division

☐ Prior Division (Please indicate Case Number and Division of previously filed action.

I understand that the actual division assignment will be in accordance with the Hillsborough County Administrative Orders. If there is no supported request for specific division assignment, this action will be assigned a division based on a random and equitable distribution system.

/s/ Kristin Demers-Crowell

**KRISTIN DEMERS-CROWELL**, ESQ.
CHRISTOPHER LIGORI & ASSOCIATES
117 S. Willow Ave.
Tampa, FL 33606
(813) 223-2929 : Telephone
(813) 251-6853: Facsimile
FLORIDA BAR # 0134521
Attorney for Plaintiff/156007
Service Email: countycourt@LigoriLaw.com

**IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION**

FRED FOX and ROBERT FOX,

Plaintiff,

vs. CASE NO.:_________

STARR INDEMNITY
& LIABILITY COMPANY, DIVISION: _________

Defendant(s).
_________________________________/

**REQUEST FOR ISSUANCE OF SUMMONS - COUNTY CIVIL**

This is a request for issuance of service of process by the Clerk of the Court as follows:

*PLEASE NOTE THAT A SEPARATE REQUEST
IS REQUIRED FOR EACH PARTY TO BE SERVED*

| **Type of Process**: (choose one) | |
|---|---|
| ☒ Initial Summons ☐ Alias Summons ☐ Pluries Summons | |
| **Type of Summons**: (choose one) | |
| ☐ County Court -indicate days to respond<br>☐ 20 ☐ 30 ☐ 45 ☐ 60 ☐ other _______ | ☒ Small Claims - Notice to Appear for Pre-Trial Conference |

| **Party Information:** | |
|---|---|
| Party to be served: | Starr Indemnity & Liability Company<br>c/o Florida Chief Financial Officer as RA,<br>Service of Process Section, |
| Party Street Address: | P.O. Box 6200 |
| Party City State Zip: | Tallahassee, Florida 32314-6200 |
| Email Address to Return Issued Summons: | **countycourt@LigoriLaw.com** |