UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRED FOX, et al.,

    Plaintiffs,

v.                                        CASE NO. 8:16-cv-3254-T-23MAP

STARR INDEMNITY &
LIABILITY COMPANY,

    Defendant.
_____/

## **ORDER**

On April 19, 2014, a vagrant torched a building owned by Robert and Fred Fox. The Foxes submitted a claim to Starr Indemnity & Liability Company, which insured the building for "fire loss." (Doc. 2 at 41–90, the insurance policy) Dissatisfied with Starr's handling of the claim and Starr's purported tardiness in tendering $1,057,192.56 (the building's estimated damage, according to the Foxes' contractor), on September 9, 2014, Fred Fox filed a "Civil Remedy Notice" with the Florida Department of Financial Services. (Doc. 2 at 93–95) In a response to the department, Starr argues that Fred's notice fails to identify with specificity the Florida law allegedly violated by Starr and fails to identify with specificity the policy term allegedly breached by Starr. (Doc. 2 at 96–97)

The parties disagreed about the amount of the loss. In accord with the policy's appraisal provision (Doc. 2 at 62), each party selected an appraiser, and the two

appraisers selected an umpire. (Doc. 2 at ¶ 14) On May 12, 2016, the appraisal panel awarded the Foxes $930,041.36 for the building's damage, and Starr paid the award. Alleging that Starr delayed payment in bad faith, the Foxes sue (Doc. 12) Starr under Section 624.155, Florida Statutes. For the second time, Starr moves (Doc. 13) to dismiss the bad-faith claim for the failure to state a claim for relief and for the lack of particularity in the fraud allegation.

## DISCUSSION

**1. The civil remedy notice**

Identifying several purported defects in the civil remedy notice, Starr alleges that the failure to submit a "valid" civil remedy notice requires dismissal of the action.[1] First, Starr argues that Robert's claim requires dismissal because Robert failed to submit a civil remedy notice. Section 624.155(3)(a) requires an insured to submit a civil remedy notice as a condition precedent to a bad-faith claim. The notice includes a blank space to identify the complainant and another to identify the insured. (Doc. 1 at 98) Fred's responses fail to mention Robert, but the "narrative" part of the notice states that "[t]his claim involves the insureds, Fred J. Fox and Robert A. Fox's (commercial) property." (Doc. 1 at 100) The Foxes argue that the inclusion of Robert's name in the "narrative" section satisfies Section 624.155(3)(a).

---

[1] If indisputably authentic and "central" to the plaintiff's claim, a document attached to the complaint can contribute to resolution of the motion to dismiss. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citations omitted). Indisputably authentic and a condition precedent to suing for bad faith, the notice is "central" to the plaintiff's claim and warrants consideration in resolving the motion to dismiss.

Second, Starr argues that the notice fails to comply with Section 624.155(3)(b)(3), which requires an insured to state "[t]he name of any individual involved in the violation."  A prompt on the first page of the notice requests that the insured "identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice."  (Doc. 1 at 98)  Although Fred wrote that the notice is "against" "Starr Liability & Indemnity Company," Fred declined to identify a natural person "involved in the violation."  The Foxes respond that Starr "fails to cite any authority where a bad faith case was barred solely because a [notice] failed to state the name of any individual involved in the violations."  (Doc. 17 at 12)  Also, the Foxes argue that they "did not have direct dealings with [Starr] and did not know the names of [Starr's] employees who were responsible for the claim."  (Doc. 17 at 13)

Neither party scrutinizes the statute's text, perhaps because an examination of the text contributes more to confusion than to clarity.  As the parties recognize, "any" might mean that an insured must identify at least one "individual involved in the violation" or that an insured must identify every "individual involved in the violation."  *See Garner's Dictionary of Legal Usage* at 65–66 ("Any may be either singular or plural.").  And the parties apparently disagree about the meaning of "individual."  Without citation to authority, Starr assumes that "individual" means a "natural person."  Unable to resolve the disagreement, *Garner's Dictionary of Legal Usage* observes:

> [I]ndividual was formerly thought to be a newfangled barbarism as a noun substituting for man, woman, or person. Certainly, those more specific terms are generally preferred over individual, but this word should no longer be stigmatized. Still, individual is best confined to contexts in which the writer intends to distinguish the single (noncorporate) person from the group or crowd.

*Garner's Dictionary of Legal Usage* at 448 (italics omitted). More helpful, *Black's Law Dictionary* defines "individual" as "of or relating to a single person or thing, as opposed to a group." *Black's Law Dictionary* at 789 (8th ed. 2002). In this instance, Starr Liability & Insurance Company is a unique entity — the only Starr Liability & Insurance Company. Finally, the statute requires identifying an individual "involved in" the violation. "Involved in" lacks meaning, so the notice prompts an insured to identify "the person or persons representing the insured who are most responsible for/knowledgeable of the facts giving rise to the allegations." (Doc. 1 at 98)

Third, Starr argues that the notice fails to comply with Section 624.155(3)(b)(4), which requires that the Foxes "shall state with specificity . . . [r]eference to specific policy language that is relevant to the violation, if any." To identify the terms allegedly breached, the notice includes this list:

-Building coverage

-Business income coverage

-All coverage provided by endorsement or rider

-The declarations page

-Loss payment or settlement provision

-Duties in event of loss policy provision

-The insurance policy's definition section

- 4 -

-The insurance policy's exclusion of coverage provisions

-All insurance policy provisions that provide coverage to the insured.

(Doc. 1 at 99) The policy's table of contents (Doc. 1 at 46) contains neither a section titled "building coverage" nor a section titled "business income coverage," and no section in the notice duplicates a section in the policy. As Starr correctly states, the list "is not specific at all. Nor is it 'policy language.' It is a list of whole sections found in most, if not all, property insurance contracts." (Doc. 13 at 15) In response, the Foxes argue that the statute "states to 'reference' specific policy language[,] not to quote, and [the Foxes] did indeed reference all portions of the policy that applied to the situation." (Doc. 17 at 14)

Not a model of careful legislative drafting, Section 624.155(3)(b)(4) uses "specific" or a variant twice, perhaps suggesting that an insured must provide twice the detail of a singularly specific notice. But as the Foxes observe, the statute requires "reference," not quoting. The *American Heritage Dictionary* defines "reference" as "a mention or an occurrence." If the statute contained no specificity requirement, the Foxes' casual "reference" to the entire insurance policy undoubtedly would suffice. But the Legislature included "specific" or a variant not once but twice in the statute. The notice lists "whole sections found in most, if not all, property insurance contracts." (Doc. 13 at 15) As Starr argues persuasively, the notice appears to lack specificity.

Also, the Foxes argue that "the clear language of the statute attests to the possibility that it may be impossible to reference any specific, relevant language from

the policy agreement." (Doc. 17 at 14) The statute requires identification of "specific policy language that is relevant to the violation, if any." Because "if any" modifies "violation" rather than "policy language," the Foxes' "clear language" argument is unpersuasive. Under the statute's "clear" language, an insured may complain about an insurer's "bad faith" absent a violation of law or of contract, an absurd result.

The Foxes argue that the notice "was sufficient to notify [Starr] of the claim practice violations and provide the insurer an opportunity to cure." (Doc. 17 at 15) Under the statute, sufficiency means "specificity." But *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012), appears to hold that an insurer need not comply "strictly" with an unambiguous statutory requirement. In *QBE*, the insured alleged a violation of Section 627.701(4)(a), which requires that "[a]ny policy that contains a separate hurricane deductible must" include in 18-point font a statutorily-mandated statement. QBE's insurance policy concededly failed to comply with Section 627.701(4)(a). *QBE* cites with approval *Prida v. Transamerica Ins. Finance Corp.*, 651 So. 2d 763 (3d DCA 1995) (per curiam). In *Prida*, the plaintiff argued that the insurance company's notice of cancellation lacked effect because Section 627.848 requires that an insurance company "shall" use a font no smaller than 12 points, and the insurance company's notice of cancellation used a 9.5-point font. Except for observing that Section 627.848 provides no consequence for an insurer's violation of

the statute, *Prida* proffers no explanation for holding that the insurer need not comply with the statute. And *QBE* states:

> The instant case is more like *Prida* than *Roberts* [which granted summary judgment for a plaintiff because the defendant's insurance policy failed to comply strictly with a statutory requirement] in several important ways. First, QBE substantially complied with the notice requirements, as did the insurance company in *Prida*. Second, the hurricane deductible notice statute had never included a penalty provision as the coinsurance statute in *Roberts* did. . . Finally, Chalfonte did not assert that it received no notice of the hurricane deductible provision, which was clearly noted on the front page of the policy, but only that the font size and one of the words in the notice did not comply with the statutory requirement.

94 So. 3d at 553–54. Although ambiguity abounds in Section 624.155(3)(b), the Foxes' notice appears to comply "substantially" with the statute. The "narrative" section of notice explains the Foxes' concern about Starr's conduct. Under *QBE* and *Prida*, the Foxes' "substantial" compliance with the statutory requirement appears to suffice.

**2. Breach of contract**

Starr argues that *QBE* requires the dismissal with prejudice of this action. In *QBE*, Chalfonte submitted a claim for property damage to QBE after Hurricane Wilma struck Florida in 2005. 94 So. 3d at 543. In addition to alleging a font-size violation under Section 627.701(4)(a), Chalfonte sued QBE for breach of contract and breach of the insurance policy's "implied warranty of good faith and fair dealing." 94 So. 3d at 544. A jury found QBE liable for breach of contract and breach of the implied duty of good faith.

On appeal, QBE argued that Florida common law recognizes no implied duty of good faith owed by an insurer to an insured, and the Eleventh Circuit certified the question to the Florida Supreme Court. *QBE* explains that Florida common law "recognize[s] an implied covenant of good faith and fair dealing in every contract" and that the covenant protects the "reasonable expectations of the contracting parties in light of [the parties'] express agreement." 94 So. 3d at 548 (internal citations omitted). And *QBE* states that a party cannot prevail on a claim for breach of the implied duty of good faith if "application of the [duty] would contravene the express terms of the agreement" or if the plaintiff asserts no claim for "breach of an express term of the agreement." 94 So. 3d at 548 (internal citations omitted). Despite stating that Florida contract law recognizes an implied duty of good faith in "every" contract, *QBE* holds that an insured cannot sue an insurer at common law for breach of the implied duty of good faith. 94 So. 3d at 548.

Although *QBE* primarily discusses the existence (or not) of a first-party bad faith claim at common law, *QBE* states that the Florida Supreme Court "has repeatedly described the statutory bad-faith action [under Section 624.155(1)(b)] with reference to the duty of good faith and fair dealing." 94 So. 3d at 948. And as explained above, *QBE* states that the Florida courts refuse to apply the implied duty of good faith if application of the duty "contravene[s] the express terms of the agreement" or if the plaintiff asserts no claim for breach of an express contract term. 94 So. 3d at 548 (internal citations omitted). Starr infers from *QBE*'s mention of the

statutory bad-faith action that a statutory bad-faith action fails if application of the bad-faith claim contravenes a contract term or if the plaintiff alleges no breach of an express term. According to Starr, this action warrants dismissal because the "application" of the Foxes' statutory bad-faith claim contravenes the appraisal provision and because the Foxes fail to identify an express term allegedly breached. (Doc. 13 at 9–10)

*QBE*'s mention of the statutory bad-faith claim provides little guidance. But three District Courts of Appeal decisions issued after *QBE* hold that an insured can succeed on a first-party bad-faith claim even though the insurer timely paid an appraisal award in accord with a policy term. In *Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co.*, 100 So. 3d 1155 (Fla. 4th DCA 2012) (Bloom, J.), the plaintiff sued the defendant insurance company for breaching the insurance contract by failing to pay money owed under the policy. 100 So. 3d at 1156. The defendant invoked the policy's appraisal provision, paid the appraisal award, and successfully moved for summary judgment on the breach-of-contract claim. The plaintiff amended the complaint to sue for bad faith, but the trial court dismissed the bad-faith claim because the insurer prevailed on the breach-of-contract claim.

Reversing the trial court, *Trafalgar* states that a determination of the "actual extent of the insured's loss" must precede a bad-faith claim and cites *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289 (Fla. 1991). In *Blanchard*, an uninsured motorist struck the plaintiff's car and permanently injured the plaintiff, who

- 9 -

successfully sued the motorist in state court for negligence. State Farm insured the plaintiff for up to $200,000 for harm caused by an uninsured motorist, and the trial court entered judgment against State Farm for the policy limit and against the uninsured motorist for the excess judgment. After the conclusion of the action, the plaintiff sued State Farm in federal court for failing to settle the uninsured-motorist claim in good faith. The district court dismissed the bad-faith claim because the plaintiff "split his cause of action" by failing to assert the bad-faith claim in the state-court action. On certification from the Eleventh Circuit, *Blanchard* holds that an "insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before" the insured can sue for bad faith. 575 So. 2d at 1291. Also, *Blanchard* states that "a determination of the existence of liability on the part of the uninsured tortfeasor and [a determination of] the extent of the plaintiff's damages" must precede a bad-faith claim. 575 So. 2d at 1289.

Starr argues that *Blanchard*'s statements (for example, that a determination of liability must precede the bad-faith claim) require the Foxes to succeed on a breach-of-contract claim against Starr before the Foxes can state a claim against Starr for first-party bad faith. But *Trafalgar* holds that a plaintiff need not obtain a "determination of the existence of liability" through a trial. 100 So. 3d at 1157–58. Rather, an "arbitration award establishing the validity of an insured's claim satisfies" *Blanchard*'s requirements. 100 So. 3d at 1158 (citing *Dadeland Depot, Inc. v. St. Paul*

*Fire & Marine Ins. Co.*, 945 So. 2d 1216 (Fla. 2006)).  And *Trafalgar* "see[s] no meaningful distinction between an arbitration award and the appraisal award . . . for the purpose of deciding whether the underlying action was resolved favorably to the insured."  100 So. 3d at 1158.

*Hunt v. State Farm Florida Ins. Co.*, 112 So. 3d 547 (Fla. 2d DCA 2013) (LaRose, J.), and *Cammarata v. State Farm Florida Ins. Co.*, 152 So. 3d 606 (Fla. 4th DCA 2014) (per curiam) (en banc), adopt *Trafalgar*'s holding.  Although *Blanchard* states that an the insured must obtain the favorable resolution of a breach-of-contract claim before the insured can sue for bad faith, *Cammarata* attributes that statement to *Blanchard*'s "procedural context."  152 So. 2d at 610.  *Cammarata* holds that "the parties' settlement via the appraisal process, which determined the existence of liability and the extent of the insured's damages," satisfies *Blanchard*'s requirements. 152 So. 2d at 612.  Absent a persuasive indication that the Florida Supreme Court requires that success on a breach-of-contract claim precede the bad-faith claim, a district court in a diversity action must follow the decisions of the District Courts of Appeal.  *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2007).  Under *Trafalgar*, *Hunt*, and *Cammarata*, a plaintiff insured need not allege success on a breach-of-contract claim to sue the defendant insurer for bad faith.[2]  Rather, an appraisal award satisfies *Blanchard*'s requirement that the plaintiff

---

[2] Specially concurring, Judge Gerber explains in *Cammarata* that binding precedent "compel[s]" the conclusion that an appraisal award satisfies the requirement that a determination of liability and a determination of the plaintiff's damages precede the bad-faith claim. Judge Gerber
(continued...)

- 11 -

obtain a determination of liability and a determination of damages before suing for bad faith. *Trafalgar*, 100 So. 3d at 1158; *Hunt*, 112 So. 3d at 549; *Cammarata*, 152 So. 3d at 612–13. And although interesting, *QBE*'s mention of the statutory bad-faith action fails to compel the conclusion that a plaintiff must allege an express term allegedly breached or that a purported conflict between the insurance policy and the application of bad faith requires dismissal of the bad-faith claim.

**3. The fraud allegation**

Starr argues that paragraph 23(k) of the complaint fails to comply with Rule 9(b), which requires pleading fraud with particularity. The paragraph alleges Starr's "misrepresentation and/or omission of pertinent facts relating to the coverages and/or facts of the loss at issue." Although paragraph 24 of the complaint details Starr's purported failure to handle the claim in accord with Florida law and to timely pay the claim, the paragraph fails to identify (either generally or with particularity) a misrepresentation. The Foxes argue that the notice provides sufficient detail about Starr's purported misrepresentations. (Doc. 17 at 15–16) But under Rule 10(c), the notice is not part of the pleading. Also, the notice omits mention of a purported misrepresentation.

---

[2] (...continued)
opines that "the record [in *Cammarata*] indicates that the insurer merely exercised its rights under the contract's agreed-upon dispute resolution process of appraisal. The insurer's exposure should be at an end." *Cammarata*, 152 So. 3d at 614 (Gerber, J., specially concurring) (citing *Hill v. State Farm Florida Ins. Co.*, 35 So. 3d 956 (Fla. 2d DCA 2010) (Altenbernd, J.)).

**4. Punitive damages**

Section 624.155(5) permits punitive damages if the insurer violates Florida law "with such frequency as to indicate a general business practice." Also, the insurer must violate the law either "wilfully, wanton[ly], and malicious[ly]," or with "reckless disregard for the insured's rights." The Foxes concede that the complaint fails to allege facts that show the frequency of Starr's purported violations. (Doc. 17 at 16) Because no facts support the request for punitive damages, the request warrants striking under Rule 12(f).

The Foxes request leave to amend the complaint "to set forth the pattern and practice of similar actions in market conduct studies and other insurance investigations." (Doc. 17 at 16) The request warrants denial.

## CONCLUSION

The motion (Doc. 13) to dismiss the amended complaint is **GRANTED-IN-PART** and **DENIED-IN-PART**. The notice, which explains the Foxes' dissatisfaction with Starr's handling of the claim, appears to comply "substantially" with Section 624.155(3)(b)'s requirements. Under *Trafalgar, Hunt*, and *Cammarata*, an appraisal award meets *Blanchard*'s requirement that a determination of liability and a determination of the plaintiffs' damages precede a bad-faith claim under Section 624.155(1)(b). Because insufficient facts support the allegations that Starr "misrepresented" a fact and that Starr violates Florida law as a "general business practice," the misrepresentation allegation in paragraph 23(k), the

- 13 -

"general business practice" allegation in paragraph 26, and the punitive-damages request in paragraph 27(d) are **STRICKEN**.  The motion (Doc. 4) to dismiss the original complaint is **DENIED AS MOOT**.

ORDERED in Tampa, Florida, on April 28, 2017.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE